The next matter on our calendar is Female Port Authority Officer 47708 versus the Port Authority of New York. Thanks. Thank you. You may proceed. Good morning, your honors. May it please the court. My name is Anthony Barbero, and I represent the appellant. The district court's grant of summary judgment on the appellant's title seven and 1983 employment discrimination claims was not warranted because the judge applied a standard, a wrong standard. Interrupt just for a second. Why is this case called Female Port Authority Officer with a number as opposed to just her name? She agrees to the use of her name. Yeah, it's in the record. I mean, there's nothing to be hidden here. There's a presumption of open records. Her name is in various parts of the appendix. She agreed that she could proceed under her name. I don't understand why this is going forward under a pseudonym. Initially, your honor, Mr. Joseph Murry made that decision to use the female port authority versus her name. I wasn't involved with that part of the decision making process. But I mean- But it is an open record. The court has to sort of let you do that, right? I'm sorry? Generally, a court has to allow you to do that. And so did Judge Garifas say you could go forward, or was there any discussion about whether or not the real name ought to be used? Judge Garifas, my understanding, didn't have any issue with the use of the female port authority. But yes, she ultimately agreed that the use of her name could eventually be used and was in the depositions, your honor. Okay, thanks. The appellant demonstrated sufficient evidence that a reasonable jury could conclude that the plaintiff was unlawfully terminated because the port authority defendant didn't apply a uniform standard in its policies when it permitted or favored two male PPOs, probationary police officers, small and quirk, to remain on the job when they were found to have misconduct, lied, obstructed an investigation, and didn't withdraw, sorry. Well, they got suspended and they didn't get fired, right? Correct, your honor. They had a 30 day rip. They actually received favorable treatment in regard to their suspension. I guess the difference was, at least according to what's been put forward by the port authority, is that they fessed up to their lack of candor and your client didn't, right? Well, actually, that's what the port authority's put forward with a number of other pretextual reasons why she was terminated. But the lower court actually found that that didn't actually occur. The lower court squarely said that small lied, that quirk lied, in the order. Actually, the- The court concluded that the evidence showed that they both came clean in the end. And that was the difference, whereas your client did not. Do you dispute that? Yes, your honor. The other two did not come clean? The district court actually said that small, if the theory came clean, was actually after his interviews ended when he was actually given a fourth interview. Ms. Howard wasn't given a fourth interview. She wasn't given a subsequent interview. So the district court found that actually he did not come clean at the time at the same standard that was applied to Ms. Howard. Is there any evidence at all that the termination of Ms. Howard was on the basis of her sex? Yes, your honor. Tell me what that is. So there was a three month investigation to conduct that occurred one night when the graduates and academy staff had gone out. After that, there was allegations of wrongdoing that evening. The Port Authority's Police Integrity Unit and its Inspector General's Office did a three month investigation. Thousands of hours, over 100 interviews. What indication is there that they treated her more harshly because she is a woman? Because they treated males favorably. That's it, you've got disparate treatment, you've got quirk and smalls being treated differently, and you're saying they're similarly situated. And the only other evidence that I'm aware of is the pretext, right? You're saying that the pretextual, the late explanation for- Yes, your honor. Because she wasn't initially listed among those who were going to be dismissed, and then she was dismissed. That's what you're saying? Yes, your honor. Because you have nothing else, right? There's nothing else in the record that supports some intent or finding of intent? Yes, we do, your honor. What else you got? During the interviews of the PPO, Lieutenant Timothy McGovern actually was the head of this investigation. When he had deposed one of the PPOs, there was some colloquy back and forth. And his answer to that female PPO was, you're a woman, you figure it out. We also have in his deposition- He didn't say that to Ms. Howard. No, he did not, your honor. But we also had asked him in his deposition, based on that statement to another female PPO, if he's ever made any comments about sex, race, national origin, religion that were not either descriptive or identification. And he said, I'm sure I am. So the head of the investigation, who Dunn and Degner relied on, has been found to make what we say discriminatory comments, intentional comments to females. And the fact that evidence in this case- There were seven men who were fired, right? Yes, your honor. And those men were found to have wrongdoing. And the key is the 17- Given the big picture, this wild and crazy party and so many officers, probationary officers, disassembling and not being forthright. Could a reasonable jury really conclude that they fired her because she was a woman? Yes, your honor. Because these cases don't have the smoke and gun. I mean, this court held in Zarda that the employer's motives, not merely their choice of words, is what plays a hand. And what's on point is, the court said, the semantic sleight of hand is not a defense, it's a distraction. I understand that, but often there'd be additional evidence of other disparate treatment. That women were disciplined at a higher rate. That women were not promoted or hired at the same rate as men to suggest that there was a discriminatory animus throughout the institution. But there's nothing in the record about any of that, right? Correct, because this pertains to one individual. And in regard to the- Your argument that an overall misogynistic attitude at the Port Authority is enough to save Ms. Howard's lawsuit? Yes, your honor. Because- We don't have a case that says that, do you? You have the fact that the trier of facts, you have Reeves that actually says the trier of facts- Reeves gets her prima facie, it gets beyond that. But after that, there has to be some there, there. And the fact that it was misogynistic, and that the women were treated badly at the party, and maybe on the job, is not enough to show discrimination toward this one female, unless there was something more than just Reeves. Well, opposition, that's a question for the jury. And on summary judgment, we didn't get to go to the jury, because the jury could determine the falsity of the statements by the Port Authority. The pretextual reasons, the changes in the pretextual reasons to show that there was an intentional discrimination. Because as the Supreme Court said, there's no smoking gun. Are you still relying on the other, below you had relied on, Husco as a comparator? Yes. Are you still relying on him? Yes, your honor. And the reason being is Husco is named in the report to having obstructed the investigation and made comments about destroying evidence. And it goes to the essence of the report that Ms. Howard wasn't overlooked. This wasn't a mere simple, she was left off the end of the report. That shows that there are other people in the report that may have had conduct that didn't raise to the level of misconduct and weren't subsequently included. You're only challenging the termination on appeal, right? You're not, before you had a sexual harassment? Yes, your honor. Just the termination? Yes, your honor. Thank you. So, in regard to- The time has expired, but you reserve three minutes for rebuttal. Thank you, your honor, yes. Okay, we'll hear from the Board of Authority. Good morning, your honors. May it please the court, my name is Kathleen Miller, and I'm here on behalf of the defendants, the Port Authority of New York and New Jersey, Chairman John Degnan, who is now formerly Chairman John Degnan, and retired Superintendent Michael Fedorco. The only issue before this court is a very narrow one, and it's a Title VII issue, and I submit to this court that there is no 1983 claim here. Although the elements for analysis under Title VII for this type of disparate treatment discrimination in 1983 are the same, there is a difference in that neither John Degnan nor Michael Fedorco could be held liable under Title VII. There was no claim made in the complaint here under 1983 for discriminatory disparate treatment arising out of plaintiff's termination. Plaintiff was terminated because she was found to have stonewalled and lied during an official investigation. So did the two guys. Well, your honor, we do disagree with the lower court's analysis as to whether they are comparators. Both Quirk and Small recanted during the course of their interview. Quirk initially both acknowledged that he saw Ryan being ejected from the bar. He only fenced with the investigators in terms of what he knew about the reason for his being investigated. But within a very short period of questioning by Lieutenant McGovern, he admitted that when he went up to the women, the women told him that Ryan had touched their breast. And he apologized to the women, bought them a round of drinks. There is no other evidence that he was- I thought they needed that night, another round of drinks. Well, I think he was attempting to apologize, your honor. The only other question about whether he was fully candid arises with respect to police officer Kennelly's testimony that the following day she was in a room with Quintana, Montero, Quirk, and Uman, and Ryan admitted that he was ejected for touching the women's breast. None of the other individuals said, and they were all interviewed by the PIU Police Investigation Unit. None of the other individuals said that they heard Ryan make that statement. And we really don't know that they did hear Ryan make that statement. So there's no evidence that Quirk lied at any other time. And he was very candid with the police officers when they pressured him to tell the truth about what he learned about the reason Ryan was ejected. Ms. Howard never recanted. She stuck to her argument, I don't recall, throughout the investigation. She stuck to those arguments, your honor. I'm the only one that didn't recant of all? That's correct. Small, again, can be distinguished. Small initially came in and told the police officers, and I disagree with counsel as to what transpired during his investigation. If the court looks at the record, you will see that Small initially told the police officers that he had deleted his group chat from his phone right before his interview, but that there was nothing in the group chat that had to do with the Texas, Arizona investigation. And that there were no photos on it, and there was nothing that was derogatory. That was untrue. And before he finished his interview, he gave them his phone. He opened his phone. He showed them a text from August 23rd and 24th of 2014, which was the date of the party at the Texas, Arizona that became so notorious in the press for misbehavior. And they were asking him questions about it. They were asking him questions about these texts. It wasn't after the interview ended that he disclosed the text. It's during the interview, and it's right in the record. It was after the interview that he agreed that he would send them snapshots of those same texts. And they saw in the text that there were two photographs, which they later brought, and it's in the IG report. They later brought him back as a subject, not as a witness, but as a subject, to find out about the two photographs. One of him sitting on a jersey barrier looking disheveled, which he identified as having been taken, well, after the party when he came back to New York to go to a diner. And then there was a picture of a woman disrobing, which he identified as coming, and this is all in the record, in the second transcript of his subsequent interview. Disrobing at a party in Wildwood, New Jersey, three years before, which he thought was amusing, and he included in the text. But it had nothing to do with the Texas, Arizona party. So Small pretty much came clean, whereas the plaintiff did not. She told the investigator she didn't know where she was in the bar. She couldn't remember who was in the bar with her, even though just before her interview, she'd been shown a video clip that showed her in the bar with Tannis. And she couldn't remember anything about it until they re-showed her the same clip during her interview where she was able to identify two people. She said that right before she came into her interview, she was told by somebody in the waiting area in the gym that the Fighting 113th group chat that she was on while she was in the academy had been deleted. And then she told the officer she couldn't remember, even though it occurred moments before, who told her that? Initially, she said it was Novello, but then at the end of her interview, she told McGovern, it wasn't Novello, and she couldn't remember who it was, and she couldn't remember whether it was in the gym or before she got to the gym when she was meeting with the PBA at the Dunkin' Donuts. But all of this is just your argument that she's not similarly situated with Quirk and Smalls, right? That's correct, Your Honor. But even if you look at the, was the Port Authority's, if you get beyond that, and you look at was the Port Authority's reason for terminating her a pretextual reason, she can't show that it was. There is no, intuitively, they just trained her. They spent a lot of money training her for 24 weeks at the academy. She was one month out of the academy when this interview took place. And it was only in November that they decided to terminate her for lying and stonewalling. There's no evidence of intent to discriminate. That reason that they gave for terminating her is a good and valid reason. Integrity, honesty, and forthrightness are what- But if that is the standard applied to women, but not applied to men, then that would be enough to get to a jury, right? It would be, Your Honor, except that the men in this case were not consistently stonewalling or lying. They all recanted. That's your point, they're not similarly situated. That seems to me really what you're relying on, right? I am relying on that, because if you go beyond the IG report, and this court is entitled to do that, and you look at the interviews between the IG's office and the three police officers, or probationary police officers, Quirk, Small, and the plaintiff. They're readily distinguishable. Even at the end of her interview, plaintiff was asked, did you walk out of the bar or were you carried out, she answered, I don't know. And they had warned her throughout her interview that they were having trouble with the number of I don't recalls, I don't recalls. And they allowed her to go meet with the PBA representatives during her interview. And when she came back, she persisted. But even if we were to conclude, as the district court did, that they were similarly situated, your position is the claim still fails because? Because the reason that they gave for her termination, namely that she was lied consistently in Stonewall throughout her interview, is a non-discriminatory reason for her termination as a probationary police officer. And there's no evidence, there's no evidence of an intent to discriminate. I know counsel mentioned a remark that he said, Lieutenant McGovern made to another police officer. It's not part of this record. I don't know that I would agree that he made that remark. But there's certainly no evidence in this record of anybody's intent to discriminate. And as I said, it's counterintuitive that the Port Authority would invest all the time and money to train this woman as a police officer to turn around before she hardly worked as a police officer and terminate her, because she was a woman. Thank you. Thank you, your honors. Counsel, you deserve three minutes for rebuttal. Thank you, your honor. The lower court actually found, and quote, reasonable inferences in favor of the plaintiff. It would not be unreasonable for a jury to find that the plaintiff was similarly situated in all material aspects to mail PPO's small and quirk. This issue is clear. They were PPO's, the mail PPO's got favorable treatment for misconduct. The importance is the report- We can't, they told the truth before it was over. That's what counsel just told us. Actually that's, in comparing the situations, the court found that small did not come around until his fourth interview. So when the interview is concluded for the PPO, they actually gave small the right to have a union rep at a fourth interview, where Howard never had that option. He was treated favorable, he got less harsh of a treatment. And the key here is that the report itself, they keep discrediting the report saying it's an oversight, it's an oversight. The manpower, the power that went into that report was three months investigation. It had attorneys working on it. It had the Inspector General working on it. It had Mr. Dagnon who- How do you respond to the argument that why would the Port Authority want to fire her because she was a woman after having trained her for 24 weeks? Because it goes to Timothy McGovern's, our understanding from his comments of his perception and differences between males and females. Maybe they didn't like the way that she was drunk that night, or she had a drink that night, or maybe they didn't like the way that she had answered. But Ms. Howard was actually asked the same question, and the local court found this on the DUNA, I don't recall. She was asked the same question five different times on five different questions. So if you narrow it down, the male PPOs- She couldn't remember whether she walked out on her own, she couldn't remember whether she was carried out, and yet she denied that she was drunk. Yes, Your Honor, but- Is it reasonable for the Port Authority to conclude that she was being less than forthright? It is incorrect. There may be a lack of candor there, we acknowledge that, but not to the right. We believe that's a jury question, and not to the right where the Port Authority conclusively concluded that these male PPOs lied. It's important that during Ms. Howard's interview, she actually stopped and asked the two investigators, Martinez and Skadis, it felt like they were lying to her, they were trying to trick her. So at that point, she wasn't sure of the truthiness of the questions being asked of her. So if she didn't answer the specific question, her response was, I don't recall. And the significance of that report, the October 20th report, it was vetted for weeks beforehand. It was actually stated by the Attorney General, the Inspector General, I'm sorry, and the Acting Inspector General, that it has to be absolutely accurate, and it is absolutely accurate when it was issued and signed. And it wasn't until after the case was brought in the lower court that the Port Authority started coming up with all these different reasons. And that in itself should tell the court, it's slight of hand from shifting, she lied, there's no finding of lying. She stonewalled, there's no stonewall. It's not in their report. That's the smoking gun that hurts them, and why this is a question for the jury. Thank you, Your Honors. Thank you. Thank you both. We'll reserve decision.